FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 02, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HAROLD MAZZEI,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No.4:17-CV-05056-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 15. Attorney D. James Tree represents Harold Mazzei (Plaintiff); Special Assistant United States Attorney Joseph John Langkamer represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff protectively filed an application for Supplemental Security Income (SSI) on January 2, 2014, Tr. 109, alleging disability since December 1, 2002, Tr. 213, due to chronic pain, depression, a knee injury, a back injury, and a neck injury, Tr. 229. The application was denied initially and upon reconsideration. Tr. 138-45, 149-53. Administrative Law Judge (ALJ) Larry Kennedy held a hearing on September 23, 2015 and heard testimony from Plaintiff and vocational expert, Trevor Duncan. Tr. 40-94. The ALJ issued an unfavorable decision on December 29, 2015. Tr. 23-35. The Appeals Council denied review on February 24, 2017. Tr. 1-7. The ALJ's December 29, 2015 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on April 27, 2017. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 46 years old at the application date. Tr. 213. He completed four or more years of college in June of 2011. Tr. 230. He reported that in the last fifteen years he has worked as a fork lift driver, laborer, and pot setter. Tr. 231, 257. Plaintiff reported that he stopped working on January 1, 2003 due to his conditions. Tr. 230.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is

not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On December 29, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 2, 2014, the date of application. Tr. 25.

At step two, the ALJ determined Plaintiff had the following severe impairments: lumbar and cervical spine degenerative disc disease and obesity. Tr. 25.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr.29.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> The claimant can frequently reach below shoulder level and occasionally reach overhead (i.e. above shoulder level). He can frequently handle. The claimant can occasionally balance, stoop, kneel, and crouch. He cannot climb ladders, ropes, scaffolds, ramps or stairs and cannot crawl. The claimant must avoid concentrated exposure to vibrations and hazards. The claimant can perform simple, routine tasks and follow short, simple instructions. The claimant can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period. The claimant requires a work environment with minimal supervisor contact (minimal contact does not preclude all contact, rather it means contact does not occur regularly. Minimal contact also does not preclude simple and superficial exchanges and it does not preclude being in proximity to the supervisor). The claimant can work in proximity to coworkers but not in a cooperative or team effort. The claimant requires a work environment that has no more than superficial interactions with co-workers. He requires a work environment without public contact.

Tr. 29. The ALJ identified Plaintiff's past relevant work as production assembler and forklift operator and concluded that Plaintiff was able to perform his past

relevant work as a production assembler.  Tr. 33.

In the alternative to a step four denial, the ALJ also made a step five determination that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of hand packager and mail clerk.  Tr. 33-34.  The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 2, 2014, through the date of the ALJ's decision.  Tr. 35.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to properly address Plaintiff's symptom statements, (2) failing to make a proper step two determination, (3) failing to make a proper step three determination, and (4) failing to properly weigh the medical opinions in the record.

## DISCUSSION

### 1.    Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that his statements concerning the intensity, persistence, and limiting effects of his symptoms were less than fully credible.  ECF No. 14 at 12-19.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is

not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements less than fully credible concerning the intensity, persistence, and limiting effects of his symptoms. Tr. 30. The ALJ reasoned that Plaintiff's statements were less than fully credible for three reasons: (1) they were inconsistent with the medical evidence; (2) they were inconsistent with his reported activities; and (3) he made inconsistent statements regarding these symptoms and their limiting effects.

### A.    Contrary to the objective medical evidence

The ALJ's first reason for finding Plaintiff's statements less than fully credible, that Plaintiff's symptoms are not supported by objective medical evidence, fails to meet the specific, clear, and convincing standard. While objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects," it cannot be the sole reason for rejecting the testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here the ALJ's two additional reasons for rejecting Plaintiff's testimony fails to meet the specific, clear, and convincing standard. *See infra*. Therefore, this reason alone cannot support the ALJ's determination.

### B.    Reported Activities

The ALJ's second reason for finding Plaintiff's statements less than fully credible, that Plaintiff's activities cast doubt on his alleged limitations, does not meet the specific, clear, and convincing standard.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their

transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

Here, the ALJ found that Plaintiff was able to attend to his personal needs, do household chores, sit in front of the television or computer, and drive unimpaired. Tr. 31. The ALJ reasoned that sitting in front of the television or computer was transferable to sustaining attention for simple tasks and sitting for periods of time. *Id.* He further found that Plaintiff's ability to drive unimpaired was transferable to using the upper and lower extremities and turning of the head, neck, and eyes. *Id.*

First, the ALJ failed to account for the kind of chair Plaintiff reportedly used to sit for these extended periods. Plaintiff reported to at least one provider that he spends his day sitting in a recliner watching television. Tr. 342. Therefore, this does not transfer to sitting in an office chair eight hours a day. Additionally, the ability to watch television or use a computer throughout the day does not equate to the ability to perform work activity. The Ninth Circuit in *Garrision v. Colvin* specifically addressed the practice of rejecting pain testimony because a claimant took part in everyday activities:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day. *See, e.g., Smolen,* 80 F.3d at 1287 n. 7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted)); *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989) ("[M]any home activities are not easily transferable to what

may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

759 F.3d 995, 1016 (9th Cir. 2014).  In *Garrision*, the claimant was caring for her child with help from her mother, and the Ninth Circuit held that the ALJ erred in finding this activity inconsistent with her reported pain.  *Id*. at 1015-16.  Here, Plaintiff is sitting in a recliner and watching television or accessing his computer. This is literally "resting all day" as referenced in *Garrision*.

In terms of Plaintiff's ability to drive, the Court acknowledges that upon application, Plaintiff reported that he drove a car, Tr. 244, but by March of 2014, he reported a reduced ability to drive associated with his pain, Tr. 279.  By January of 2015 he reported to a provider that he no longer drives.  Tr. 342.  Considering this and the Ninth Circuit's holding in *Garrision*, these typical daily activities, sitting in a recliner watching television and driving a car, are not sufficient to support the notion that a claimant could sustain work as defined by the Commissioner.  *See* S.S.R. 96-8p (The ability to work is defined as performing work activities on a "regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule.").  As such, this reason also falls short of meeting the specific, clear, and convincing standard.

### C.    Inconsistent Statements

The ALJ's third reason, that Plaintiff made inconsistent statements regarding the side effects of his medications, is not supported by substantial evidence.

The Ninth Circuit has held that the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid."  *Smolen*, 80 F.3d at 1284.  However, Plaintiff's statements regarding his medications at the hearing were not inconsistent with his prior statements to providers.

//

At the hearing, Plaintiff testified that he started "this Lithium"[1] about a month prior to the hearing and Cymbalta three days prior to the hearing. Tr. 58, 62. He reported that the Cymbalta was causing dry mouth, nausea, and making him feel jittery. Tr. 57-58. He also stated that his medications made him hyper or drowsy and that these side-effect impacted his ability to work. Tr. 61. He reported that since these medications were new, he needed to call his provider and "tell them the reactions I'm having." Tr. 62.

The ALJ refuted this testimony by citing multiple locations in the record where Plaintiff told providers that he was not experiencing side effects from his medications. Tr. 31. First, the ALJ cited an August 14, 2014 treatment record in which Plaintiff stated that side effects from his medications were minimal. *Id.* *citing* Tr. 409. However, Plaintiff's medication list at this time did not include either Lithium or Cymbalta. Tr. 409. Next, the ALJ cited a December 2, 2014 treatment note in which Plaintiff reported he had no negative side effects from his medications. Tr. 31 *citing* Tr. 405. At this time, Plaintiff was prescribed Lithium, but he was not prescribed Cymbalta. Tr. 405. Likewise, the ALJ cited a third report dated June 15, 2015 in which Plaintiff reported that he experienced no negative side effects from his medications. Tr. 31 *citing* Tr. 398. Again, Plaintiff's current medications list included Lithium, but not Cymbalta. Tr. 398. Therefore, there is not substantial evidence to support the ALJ's finding that

---

[1]The Court notes that Plaintiff's reference to "this Lithium" being started a month prior to the hearing may seem inconsistent as Plaintiff being prescribed Lithium in the year prior to the hearing. However, there is evidence in the record that Plaintiff discontinued Lithium in July of 2015 and requested to be assigned a new medication management nurse through his mental health provider a month prior to his hearing. Tr. 361, 424. This is consistent with his testimony at the hearing. Tr. 62.

Plaintiff's testimony regarding his side effects were inconsistent with his previous reports to his providers as he was not taking this combination of medication at the time he reported a lack of side effects. As such, this reason does not meet the specific, clear and convincing standard.

The case is remanded for the ALJ to readdress Plaintiff's symptom statements on remand in accord with S.S.R. 16-3p.

## 2. Step Two

Plaintiff challenged the ALJ's step two determination that his obstructive sleep apnea, chronic pain disorder, major depressive disorder, and personality disorder did not constitute severe impairments. ECF No. 14 at 7-12.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 416.922(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290 (internal quotation marks omitted).

### A. Obstructive Sleep Apnea

The ALJ acknowledged Plaintiff's diagnosis of severe obstructive sleep apnea in August of 2015, but found no additional treatment and no significant functional limitations related to the condition. Tr. 26 *citing* Tr. 346. However, Plaintiff's hearing was held in September of 2015 and the ALJ closed the record, meaning no additional evidence of treatment and limitations could be associated with the record. Tr. 94. Considering the case is being remanded for the ALJ to readdress Plaintiff's symptom statements, the ALJ is further instructed to gather any outstanding records and readdress Plaintiff's obstructive sleep apnea.

## B. Chronic Pain Syndrome

Next, the ALJ noted that the record contained a diagnosis of chronic pain syndrome, but found that chronic pain syndrome was not a medically determinable impairment. Tr. 26. The ALJ reasoned that Plaintiff's pain was the result of his other severe medically determinable impairments and did not constitute an impairment standing alone. *Id*. He found that chronic pain syndrome did not exist as either a psychological or physical disease at the time Plaintiff was diagnosed, and he cited the DSM-IV as support. Tr. 26-27.

The Ninth Circuit has discussed pain, chronic pain syndrome, and the complexity associated with quantifying pain. *See Fair*, 885 F.2d at 601 ("[P]ain is a completely subjective phenomenon" and "cannot be objectively verified or measured."); *Lester*, 81 F.3d at 829 ("Pain merges into and becomes a part of the mental and psychological responses that produce the functional impairments. The components are not neatly separable."). Recognizing that pain is subjective and that there is no objective way to measure it, the ALJ's flawed analysis of Plaintiff's symptoms statements proves fatal to any of the ALJ's findings associated with Plaintiff's reported pain.

Additionally, whether or not an impairment exists according to medical science is an issue best addressed by medical experts, not an ALJ. Therefore, upon remand, the ALJ should address the existence of chronic pain syndrome with both a medical expert and a psychological expert. The ALJ can then rely on their testimony to determine whether chronic pain syndrome is a severe impairment at step two.

## C. Mental Health Impairments

The ALJ found that all of Plaintiff's diagnosed mental health impairments were not severe. Tr. 27-29. Considering the case is being remanded for the ALJ to further address Plaintiff's symptom statements, gather additional records, and call a psychological expert, the ALJ will readdress Plaintiff's mental health

impairments at step two.

The Court is struck by this analysis that eliminates consideration of selected impairments and symptoms beyond step two. The ALJ is to consider Plaintiff's impairments singularly and in combination as part of his step two determination. *See* S.S.R. 96-3p. An ALJ is required to address whether any synergistic relationship between fatigue, depression and pain would further limit Plaintiff's functional abilities. Therefore, upon remand, the ALJ is to take testimony from both a medical and psychological expert regarding the relationship between fatigue, depression, and pain.

**3.     Step Three**

Plaintiff challenges the ALJ's step three determination. ECF No. 14 at 5-6. At step three, the ALJ determined that Plaintiff did not meet Listing 1.04, stating that Plaintiff's "condition does not include the required compromise of a nerve root or spinal cord, and does not feature evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis, as required in listing 1.04." Tr. 29. That is the totality of the ALJ's step three analysis. However, there is evidence of nerve root impingement on imaging from 2013. Tr. 315. Considering the case is being remanded, the ALJ is to readdress Listing 1.04 at step three.

**4.     Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Phillip Barnard, Ph.D., Vincent Gollogly, Ph.D., and Dan Donahue, Ph.D. ECF No. 14 at 17-20.

Considering the case is being remanded for the above stated reasons and a psychological expert is going to testify at remand proceedings, the ALJ is instructed to reconsider the medical source opinions regarding Plaintiff's mental health impairments, including Dr. Barnard, Dr. Gollogly, and Dr. Donahue.

## REMEDY

The decision whether to remand for further proceedings or reverse and

award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990).  *See also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Further proceedings are necessary for the ALJ to properly address Plaintiff's symptom statements, make new step two and step three determinations, and further address the psychological medical sources statements in the record.  Additionally, the ALJ is instructed to supplement the record with any outstanding evidence and call a medical expert, a psychological expert, and a vocational expert at a remand hearing.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for

additional proceedings consistent with this Order.

3.    Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED April 2, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE